2004-NMSC-013

90 P.3d 466

**Kathleen SALAZAR, Plaintiff–Appellee,**

v.

**CITADEL COMMUNICATIONS CORP., Defendant–Appellant.**

No. 28277.

Supreme Court of New Mexico.

April 19, 2004.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Thomas L. Stahl, Albu-querque, Eckert Seamans Cherin & Mellott, L.L.C., John J. Myers, Allan W. Brown, Pittsburgh, PA, for Appellant.

Foster, Johnson, McDonald, Lucero & Koinis, L.L.P., J. Douglas Foster, Kathryn D. Lucero, Albuquerque, for Appellee.

## OPINION

CHÁVEZ, Justice.

{1} Defendant–Appellant Citadel Communications (Company) provided Plaintiff–Appellee Kathleen Salazar (Salazar) with an Employment Handbook which, among other things, required binding arbitration of all disputes with the Company. According to the Handbook, the arbitration is to proceed in accordance with an Agreement to Arbitrate that is "annexed," or appended, to the Handbook. The Company simultaneously reserved the right to modify, unilaterally and at any time, any of the Handbook's provisions save the employee's at-will status. Because we conclude that this reservation extended to the arbitration provision of the Handbook, we further conclude that it and the annexed Agreement to Arbitrate represent an illusory and unenforceable promise. The District Court having reached the same conclusion, we affirm.

## I. Background

{2} Salazar filed a de novo appeal in District Court from an order of the New Mexico Human Rights Commission which denied her discrimination claim. She had alleged to the Commission that she was terminated from her employment at the Company because of her ethnicity and gender. The Company subsequently filed a motion to stay the District Court action and compel arbitration. The Company attached to that motion what it alleged to be a valid and enforceable agreement to arbitrate, signed by Salazar.

{3} The scope of this agreement would seem to cover Salazar's current claims against the Company. The agreement, made "in consideration of continued employment and the mutual agreement to arbitrate claims," provides that "[a]ll disputes, as defined below, between Employee and the

Company ... shall be resolved by final and binding arbitration in accordance with the provisions of this agreement." Disputes, in turn, are defined to "include all claims for legal or equitable relief based upon state, federal or local common or statutory laws." Although the agreement recognizes certain exceptions, none apply to this case.

{4} As the Company acknowledges, this Agreement was attached to the Employee Handbook, which sets forth many of the terms and conditions of employment. For example, the Handbook has sections on hours, pay, attendance, benefits, safety, conduct, and termination of employment. Additionally, the Handbook discusses the Company's dispute resolution policy and procedure, which includes a subsection on arbitration. That arbitration subsection provides, in part: "As a condition of employment with the Company, all employees and the Company agree to submit all disputes ... to arbitration in accordance with the Agreement to Arbitrate Claims entered into between the Company and its employees, *the form of which is annexed to this Handbook.*" (Emphasis added.)

{5} Although the Handbook instructs the employee to read it "so that you will know what the Company expects from you and what you can expect from the Company," it takes great pains to avoid creating a contractual relationship. The beginning of the Handbook, under a heading entitled "Important: Read Carefully" (emphasis omitted), informs the employee that the Handbook "is not intended to constitute a contract of employment between [the employee] and the Company." Furthermore, that same section states that the Handbook "supersedes and revokes all previous practices, procedures, policies, and other statements of the Company ... that modify, supplement or conflict with this Handbook," but that it, in turn, "may be amended at any time, with or without advance notice." The Receipt and Acknowledgment form, signed by Salazar, repeats the assertions that the Handbook is not a contract and can be unilaterally modified at any time. Both the Handbook and the Receipt and Acknowledgment form, however, provide one exception to the Company's un-

fettered and unilateral right to alter the terms and conditions of Salazar's employment as set forth in the Handbook: the employee's at-will status can only be modified "by an express written employment agreement executed by a regional president of the Company or the general manager of the station" and the employee. (Emphasis omitted.) Nothing in the Agreement to Arbitrate expressly states that it, having been "annexed" to the Employee Handbook, is not also subject to the Company's right to unilaterally modify its provisions or that modifying the arbitration provision in the Handbook would not affect the annexed Agreement to Arbitrate.

{6} Salazar filed a brief in opposition to the Company's motion to compel arbitration, arguing that the Agreement to Arbitrate was illusory, that it lacked consideration, and that it was unconscionable. The District Court issued a letter decision, finding the Agreement to Arbitrate unenforceable. In that letter, the Court concluded that, "given all the language of the employee handbook and the Receipt and Acknowledgment form, the arbitration agreement was subject to unilateral modification and is, therefore, invalid." The Court noted that the Company limited its ability to modify the employee's at-will status, but provided no such limitation on the agreement to arbitrate or any of the other terms and conditions of Salazar's employment. Alternatively, she concluded that the documents were ambiguous as to whether the Company could unilaterally modify the Agreement and construed the ambiguity against it. She denied the other grounds for invalidating the agreement asserted by Salazar, finding them to be without merit.

{7} The Company appealed to the Court of Appeals. *See* NMSA 1978, § 44–7A–29(a)(1) (2001) (providing for an appeal following an order denying a motion to compel arbitration). The Court of Appeals, in turn, transferred the case to this Court sua sponte. *See* NMSA 1978, § 28–1–13(C) (1987); *Martinez v. City of Grants,* 1996–NMSC–061, ¶ 3, 122 N.M. 507, 927 P.2d 1045 (noting that this Court has exclusive jurisdiction over appeals from district court orders involving the New

Mexico Human Rights Act). We affirm the District Court.

## II. Discussion

 {8} Under the Federal Arbitration Act (FAA), a pre-dispute agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). Under recent United States Supreme Court cases, such agreements can even require a party to arbitrate statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Of course, a prerequisite to compelling arbitration is the existence of a valid agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Heye v. Am. Golf Corp.,* 2003–NMCA–138, ¶ 8, 134 N.M. 558, 80 P.3d 495. To determine whether the agreement to arbitrate is valid, courts look to general state contract law, *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), with the caveat that state laws that are specifically hostile to arbitration agreements are preempted by the FAA, *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

 {9} Under general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable. *Bd. of Educ. v. James Hamilton Constr. Co.,* 119 N.M. 415, 420, 891 P.2d 556, 561 (Ct.App.1994). This principle applies equally to agreements to arbitrate. *Heye,* 2003–NMCA–138, ¶¶ 11–12, 134 N.M. 558, 80 P.3d 495. The party that reserves the right to change the agreement unilaterally, and at any time, has not really promised anything at all and should not be permitted to bind the other party. The Employee Handbook undoubtedly qualifies as such an illusory promise; by its own terms it is not a contract, should not be interpreted as a contract, and can be unilaterally altered by the Company at any time, with or without notice. Thus, the exceedingly narrow question for us to decide is whether the Agreement to Arbitrate, the "form of which" was "annexed to" the Employee Handbook, is part of the Employee Handbook or whether, as the Company argues, it is an entirely separate agreement. If the Agreement to Arbitrate is part of the Employee Handbook, then it too is subject to the Company's unfettered right to unilaterally alter it and is, for that reason, illusory. The District Court concluded that, as a matter of law, the Agreement to Arbitrate is part of the Employee Handbook. Reviewing that legal determination de novo, *id.* ¶ 4, we affirm. *See also DeArmond v. Halliburton Energy Servs., Inc.,* 2003–NMCA–148, ¶ 4, 134 N.M. 630, 81 P.3d 573, *cert. denied,* 2003–NMCERT–003, 135 N.M. 51, 84 P.3d 668.

{10} We primarily rely on the terms of the Employee Handbook itself. The Handbook, which covers most aspects of Salazar's employment, also provides for binding arbitration of disputes. That arbitration is to be accomplished "in accordance with the Agreement to Arbitrate Claims entered into between the Company and its employees." The "form" of this Agreement to Arbitrate is "annexed to" the Employee Handbook. We think it fair to say that under the common understanding of the word "annex," that which has been annexed to a larger unit has become part of that unit. *See, e.g., The American Heritage Dictionary of the English Language* 73 (4th ed.2000) (defining the verb "to annex" as "[t]o append or attach, especially to a larger or more significant thing," or "[t]o add or attach, as an attribute, condition, or consequence"); *Black's Law Dictionary* 87 (7th ed.1999) (defining the noun "annex" as "[s]omething that is attached, such as a document to a report or an addition to a building").

 {11} The Employee Handbook, therefore, provides for binding arbitration of disputes and annexes, or attaches, the form of an agreement which sets forth the manner in which the arbitration is to be accomplished. Because other language of the Employee Handbook gives the Company the right to modify any of its provisions unilaterally at any time, we conclude that the Company has retained the authority to unilaterally modify both the arbitration section of the Handbook and the annexed Agreement to

Arbitrate, which is merely the form of the agreement set forth in the Handbook. For that reason, we hold the proffered Agreement to Arbitrate, when considered in the proper context of the Employee Handbook, is illusory and unenforceable. At the very least, as the District Court alternatively held, the fact that the Agreement to Arbitrate is expressly annexed to the Employee Handbook, a document which the Company may unilaterally modify, creates an ambiguity as to whether the Company also has reserved the right to unilaterally modify the arbitration agreement. We construe ambiguities of such pre-printed contracts against the maker. *See Heye,* 2003–NMCA–138, ¶ 14, 134 N.M. 558, 80 P.3d 495.

{12} Like the District Court, we also find it significant that the Employee Handbook provides but one limited exception—the employee's at-will status—to the sweeping rule that any part of the Handbook can be unilaterally modified by the Company at any time. This exception shows that the Company, the drafter of the Employee Handbook, knew how to limit its authority to unilaterally modify any aspect of the Employee Handbook. That there is no similar exception for the arbitration portion of the Handbook in the Handbook itself, the Receipt and Acknowledgment form, or the Agreement to Arbitrate, suggests that the Company intended to retain its authority to modify the arbitration clause. By way of contrast, in *In re Tenet Healthcare, Ltd.,* 84 S.W.3d 760 (Tex.App. 2002), cited by the Company, the relevant agreement provided that "the company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, *except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below,* in its sole and absolute discretion, with or without prior notice." *Id.* at 763.

{13} In urging us to reverse the District Court, the Company relies primarily on *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832 (8th Cir.1997). In that case the U.S. Court of Appeals for the Eighth Circuit, construing Missouri law, enforced an arbitration agreement that was part of the acknowledgment form of an employee handbook.

Immediately following a provision that reserved the company's right to amend any of the provisions of the handbook at any time, the acknowledgment form provided:

> I understand [Tenet] makes available arbitration for resolution of grievances. I also understand that as a condition of employment and continued employment, I agree to submit any complaints to the published process and agree to abide by and accept the **final decision** of the arbitration panel as ultimate resolution of my complaint(s) for any and all events that arise out of employment or termination of employment.

*Id.* at 834–35. The Eighth Circuit, without a discussion of illusory promises or ambiguity, found that this arbitration clause was separate from the other provisions of the employee handbook which the company had reserved the right to amend. The court gave two reasons: first, the arbitration clause is on a separate page of the handbook, to be removed once the employee signs it, and second, the court found "a marked transition in language and tone" from the paragraph before the arbitration agreement. *Id.* at 835. That difference, the court reasoned, "would sufficiently impart to an employee that the arbitration clause stands alone, separate and distinct from the rest of the handbook." *Id.*

{14} *Patterson,* which addressed Missouri law, stands in sharp contrast to our Court of Appeals' decision in *Heye.* In *Heye,* the employee handbook mentioned the agreement to arbitrate twice: once in the body of the handbook, and a second time in the acknowledgment form. The employee's signature on the acknowledgment form attested that the employee had read the handbook, understood that the company could modify it at any time, understood that he or she was, and would remain, an at-will employee, and acknowledged "that I have read and agree to be bound by the arbitration policy set forth [in] ... this handbook." *Heye,* 2003–NMCA–138, ¶ 6, 134 N.M. 558, 80 P.3d 495. Rather than rely on a "marked transition in language and tone" to find the arbitration provision separate, the Court of Appeals found that the arbitration agreement and acknowledgment form, seemingly absolute in

**452**

their commitment to arbitration, conflicted with the reservation of the right to modify any provision of the handbook. This conflict created an ambiguity which the Court of Appeals construed against the company to find the promise to arbitrate illusory and unenforceable. *See also Dumais v. Am. Golf Corp.*, 299 F.3d 1216 (10th Cir.2002) (interpreting the same arbitration agreement as *Heye* and reaching the same result).

{15} Assuming that the Eighth Circuit adequately described Missouri law in *Patterson*, we conclude that there are sharp contrasts between the substantive contract law of that state and New Mexico. Instead, we find *Heye* to be an accurate statement of New Mexico law which we apply to this case. To the extent that Missouri law differs in regard to illusory promises or the rule, oft-repeated in this state, that we construe ambiguous adhesion contracts against the drafter, we do not find it persuasive.

### III. Conclusion

{16} We conclude that the Agreement to Arbitrate was made part of the Employee Handbook by the plain meaning of the language in that Handbook. Because the Company has reserved the right to modify any provision of the Handbook at any time, we conclude that the Agreement to Arbitrate is an unenforceable illusory promise. We affirm the District Court.

{17} **IT IS SO ORDERED.**

MAES, C.J., SERNA and BOSSON, JJ., concur.