2005-NMCA-018

107 P.3d 11

**Vickie PIANO, Plaintiff-Appellee,**

**v.**

**PREMIER DISTRIBUTING CO., a New Mexico corporation, Defendant-Appellant.**

**No. 23,907.**

Court of Appeals of New Mexico.

Dec. 20, 2004.

Certiorari Denied, No. 29,022, Feb. 3, 2005.

Michael D. Armstrong, Albuquerque, for Appellee.

Jim Dines, Gregory P. Williams, Dines, Gross & Esquivel, P.C., Albuquerque, Christopher C. Hoffman, Donna S. Beltran, Fisher & Phillips, LLP, San Diego, CA, for Appellant.

*OPINION*

VIGIL, J.

{1} Defendant appeals from a district court order denying its Motion to Compel Arbitration or, in the Alternative, to Dismiss arguing that an Employee Acknowledgment and Agreement (Arbitration Agreement) signed by Plaintiff requires her claims to be submitted to arbitration. We hold that the Arbitration Agreement is illusory and otherwise not supported by consideration. As a result, Plaintiff is not contractually bound to submit her claims to arbitration. We therefore affirm the district court.

**BACKGROUND**

{2} On October 21, 1986, Plaintiff commenced employment with Defendant, where

she worked as an administrative assistant on an at-will employment basis until her involuntary termination on April 11, 2002. During her employment, Plaintiff was presented with the Arbitration Agreement to sign with the understanding that if she did not sign it, she would be fired. Plaintiff signed the Arbitration Agreement on January 7, 1999. In pertinent part, the Arbitration Agreement states:

> I understand that this handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement, any and all policies or practices can be changed at any time by the Company. The Company retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of "at-will employment" and Arbitration Agreement, which may not be changed, altered, revised or modified unless in writing and signed by the Owner of the Company).
>
> I also understand that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the New Mexico Law Against Discrimination, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) which would otherwise require, or allow resort to, any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise ... will be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the New Mexico Statutes Annotated 44-7-01 et seq.
>
> ....
>
> **I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE Company GIVE UP OUR RIGHTS TO TRIAL BY JURY.**

{3} Following her involuntary termination, Plaintiff filed complaints with the New Mexico Human Rights Division and the United States Equal Employment Opportunity Commission. When her administrative remedies were exhausted, Plaintiff filed a complaint in the district court alleging she was wrongfully terminated by Defendant. Defendant responded with its Motion to Compel Arbitration or, in the Alternative, to Dismiss, arguing that Plaintiff is required to submit the claims in her complaint to arbitration pursuant to the Arbitration Agreement. The district court denied the motion after considering the written and oral arguments of the parties. Defendant appeals. We have jurisdiction pursuant to NMSA 1978, § 44-7-19(A)(1) (1971) (stating that an appeal may be taken from an order denying a motion to compel arbitration where the existence of an agreement to arbitrate is disputed). Arbitration agreements made on or after July 1, 2001, are governed by the current Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001) which contains a similar provision at Section 44-7A-29(a)(1) ("An appeal may be taken from ... an order denying a motion to compel arbitration.").

**STANDARD OF REVIEW**

{4} We apply a de novo standard of review to a district court's denial of a motion to compel arbitration. *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 4, 134 N.M. 558, 80 P.3d 495. Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo. *Santa Fe*

*Techs., Inc. v. Argus Networks, Inc.*, 2002–NMCA–030, ¶ 51, 131 N.M. 772, 42 P.3d 1221.

## DISCUSSION

### A. Enforcement of Arbitration Agreements

{5} In New Mexico, arbitration is a "highly favored" method of resolving disputes in part because "[i]t promotes both judicial efficiency and conservation of resources by all parties." *Id.* As a result, when parties have agreed to arbitrate, the courts must compel arbitration. *Id.; see also* NMSA 1978, § 44–7–1 (1971) ("[A] provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."); 9 U.S.C. § 2 (2000) ("[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). However, "a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate." *Heye,* 2003–NMCA–138, ¶ 8, 134 N.M. 558, 80 P.3d 495; *see also Salazar v. Citadel Communications Corp.*, 2004–NMSC–013, ¶ 8, 135 N.M. 447, 90 P.3d 466 (interpreting Federal Arbitration Act, 9 U.S.C. § 2). When presented with an arbitration agreement, we interpret its provisions using the rules of contract law. *Heye,* 2003–NMCA–138, ¶ 9, 134 N.M. 558, 80 P.3d 495; *Pueblo of Laguna v. Cillessen & Son, Inc.*, 101 N.M. 341, 343, 682 P.2d 197, 199 (1984).

### B. Consideration for Plaintiff's Promise to Submit to Arbitration

{6} A legally enforceable contract requires evidence supporting the existence of "an offer, an acceptance, consideration, and mutual assent." *Heye,* 2003–NMCA–138, ¶ 9, 134 N.M. 558, 80 P.3d 495. This case requires us to determine if Defendant provided consideration for the Arbitration Agreement. "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Id.* ¶ 12. Absent evidence of a "bargained-for exchange between the parties," an agreement lacks consideration and is unenforceable. *Smith v. Vill. of Ruidoso,* 1999–NMCA–151, ¶ 33, 128 N.M. 470, 994 P.2d 50. A promise may be consideration for a promise if it is "lawful, definite and possible." *Bd. of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 419, 891 P.2d 556, 560 (internal quotation marks and citation omitted). However, a promise that "puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration." *Heye,* 2003–NMCA–138, ¶ 12, 134 N.M. 558, 80 P.3d 495; *see also* Restatement (Second) of Contracts § 77 cmt. a (1981) (stating "[w]here the apparent assurance of performance is illusory, it is not consideration for a return promise").

{7} Defendant argues that either its continued at-will employment of Plaintiff or its reciprocal promise to submit to arbitration is sufficient consideration to support enforcement of the Arbitration Agreement.

#### 1. Continued At–Will Employment as Consideration

{8} Defendant argues that in exchange for Plaintiff's promise to submit her disputes to binding arbitration it allowed her to retain her job. However, Plaintiff was an at-will employee before she signed the Arbitration Agreement and she remained an at-will employee after she signed the Arbitration Agreement. The implied promise of continued at-will employment placed no constraints on Defendant's future conduct; its decision to continue Plaintiff's at-will employment was entirely discretionary. *See Bd. of Educ.*, 119 N.M. at 420, 891 P.2d at 561; *see also Heye,* 2003–NMCA–138, ¶ 15, 134 N.M. 558, 80 P.3d 495. Therefore, this promise was illusory and not consideration for Plaintiff's promise to submit her claims to arbitration. *See id.* ¶ 16 (stating continued employment is not consideration for an arbitration agreement); *see also Salazar,* 2004–NMSC–013, ¶¶ 3, 16, 135 N.M. 447, 90 P.3d 466

(*stating* that an arbitration agreement, "made 'in consideration of continued employment and the mutual agreement to arbitrate claims,' " was illusory); *accord Poole v. Incentives Unlimited, Inc.*, 338 S.C. 271, 525 S.E.2d 898, 900 (Ct.App.1999) ("The promise of continued employment was illusory because even though [the employee] signed the covenant, [the employer] retained the right to discharge her at any time."), *aff'd*, 345 S.C. 378, 548 S.E.2d 207 (S.C.2001).

{9} Defendant argues that *Richards v. Allianz Life Ins. Co.*, 2003–NMCA–001, ¶ 20, 133 N.M. 229, 62 P.3d 320 supports its argument that Plaintiff's continued at-will employment constitutes consideration for the Arbitration Agreement. We disagree. In *Richards*, the employee had two existing contracts with the employer's predecessor which employer assumed. *Id.* ¶ 3. The employer then terminated those contracts, and the parties entered into a new contract which contained an arbitration clause. *Id.* ¶¶ 3, 5, 16. Since there was no dispute that the employer had the right to terminate the two pre-existing contracts, and did, the continuation of the relationship between the parties was consideration for the new contract. *Id.* ¶ 20. Moreover, we held in *Richards* that the new contract constituted a substitution of the earlier contracts. *Id.* ¶ 10. In contrast, Plaintiff's employment relationship in this case never changed, and she was an at-will employee before and after the Arbitration Agreement was signed. Therefore, we reject Defendant's argument.

{10} Defendant also relies on *Stieber v. Journal Publ'g Co.*, 120 N.M. 270, 273, 901 P.2d 201, 204 (Ct.App.1995), for the proposition that an employer can prospectively modify the terms of its employee's employment. However, in *Stieber* we did not address the issue of whether continued at-will employment was consideration. Rather, we held that "[n]o breach of contract action may lie where the employer in an at-will employment relationship may prospectively change the conditions of employment at will." *Id.* Therefore, our decision in *Stieber* is likewise not controlling here.

### 2. Mutual Promise to Arbitrate as Consideration

{11} Defendant also argues that in exchange for Plaintiff's promise to arbitrate her claims it promised to arbitrate its claims and that these mutual promises are consideration to support enforcement of the Arbitration Agreement. Plaintiff counters that Defendant's promise to arbitrate its claims is illusory and is not consideration. We agree with Plaintiff.

{12} The second and third sentences of the Arbitration Agreement state:

> I understand that this handbook represents the current policies, regulations, and benefits, and that except for employment at-will status and the Arbitration Agreement, any and all policies or practices can be changed at any time by the Company. The Company retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of "at-will employment" and Arbitration Agreement, which may not be changed, altered, revised or modified unless in writing and signed by the Owner of the Company).

Although the first excerpted sentence states that Defendant is not free to change the Arbitration Agreement "at any time," the second sentence establishes the circumstances under which the Arbitration Agreement may be modified: changes must be in writing and must be signed by the "Owner of the Company." The most natural reading of these two sentences is that although Defendant cannot modify the terms of the Arbitration Agreement any way or at any time, it may, in its sole discretion, modify the terms of the Arbitration Agreement provided that it complies with the minimal formalities set forth. The Agreement is completely silent with respect to Plaintiff's signature or approval.

{13} Defendant mounts a number of arguments against this most natural reading of the words used and the obvious absence of words not used. It argues that we should construe the Agreement so that it is not illusory because we are supposed to construe contracts to be reasonable, not unreasonable. It also argues that we should so

construe the Agreement because of the strong policy in favor of arbitration. Neither consideration demands such construction. Defendant argues that the term "in writing" in the second excerpted sentence must be read to mean a writing signed by both parties. The agreement, however, does not include the wording Defendant requests we imply. Defendant also argues that its construction would be reasonably understood by an employee because of the distinction between the agreement in *Heye* and that in this case, which is that the apparently conflicting sentences are so close together in this case, whereas they were in different provisions of the agreement in *Heye.* We do not agree with any of Defendant's contentions in this regard. When this Court examines agreements to arbitrate, we will "apply the plain meaning of the language utilized." *Pueblo of Laguna,* 101 N.M. at 343, 682 P.2d at 199. We therefore reject the reading suggested by Defendant. A writing is simply "[a]ny intentional recording of words in a visual form." Black's Law Dictionary 1603 (7th ed.1999). Neither the definition of "writing" nor its use in the Arbitration Agreement supports Defendant's contention that the "writing" must require Plaintiff's signature. Moreover, to the extent there is any ambiguity in the Arbitration Agreement about whether Plaintiff's signature is required on any writing altering its terms, we construe the ambiguity against Defendant. *Salazar,* 2004–NMSC–013, ¶¶ 11, 14, 135 N.M. 447, 90 P.3d 466; *Heye,* 2003–NMCA–138, ¶ 14, 134 N.M. 558, 80 P.3d 495.

{14} The Arbitration Agreement gives Defendant unilateral authority to modify the Arbitration Agreement. The Agreement does not require Defendant to seek Plaintiff's approval before altering the terms of the Arbitration Agreement; Defendant "remains free to selectively abide by its promise to arbitrate." *Heye,* 2003–NMCA–138, ¶ 15, 134 N.M. 558, 80 P.3d 495; *see also Salazar,* 2004–NMSC–013, ¶ 11, 135 N.M. 447, 90 P.3d 466; *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002). Therefore, its promise to arbitrate is illusory and is not consideration for Plaintiff's promise.

## C. Severability

{15} The Arbitration Agreement states that if "any term or provision, or portion thereof, be declared void or unenforceable it will be severed and the remainder of this agreement will be enforceable." Pursuant to this provision, Defendant argues that we should strike the second sentence and enforce the remainder of the agreement. In support of its argument, Defendant relies on *Padilla v. State Farm Mutual Automobile Insurance Co.,* 2003–NMSC–011, 133 N.M. 661, 68 P.3d 901. In *Padilla,* our Supreme Court held that a provision in an insurance contract was void as a matter of public policy. *Id.* ¶ 13. In crafting a remedy, the Court expressed the need to ensure that the chosen remedy would "limit the application of the unconscionable term in a manner that avoids the unconscionable result." *Id.* ¶ 18. Therefore, the Court elected to strike the unconscionable provision and enforce the remainder of the agreement. *Id.* However, in *Padilla,* the Supreme Court addressed a provision in a contract whose formation was not contested. In contrast, we are presented with a dispute over whether a contract was ever formed between Plaintiff and Defendant. Because we conclude that the agreement is not supported by consideration, a contract was never formed. *See Smith,* 1999–NMCA–151, ¶ 33, 128 N.M. 470, 994 P.2d 50. Therefore, we decline Defendant's invitation to rewrite the Arbitration Agreement such that it is supported by consideration.

## D. Preservation of Issues on Appeal

{16} Defendant argues that Plaintiff has failed to preserve her argument that the Arbitration Agreement was not supported by consideration. In support of its argument, Defendant cites *Wolfley v. Real Estate Commission,* 100 N.M. 187, 189, 668 P.2d 303, 305 (1983), for the proposition that "theories, defenses, or other objections will not be considered when raised for the first time on appeal." *See also* Rule 12–216(A) NMRA. Although Defendant has properly stated the rule, it has misapplied it to Plaintiff's argument. The purposes of the preservation rule are to alert the district court "to

the error so that it is given an opportunity to correct the mistake," and to give the opposing party "a fair opportunity to meet the objection." *Harbison v. Johnston*, 2001-NMCA-051, ¶ 7, 130 N.M. 595, 28 P.3d 1136 (internal quotation marks and citation omitted); *see also Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 (stating "[t]he party claiming error must have raised the issue below clearly, and have invoked a ruling by the court, thereby giving the trial court an opportunity to correct any error") (citation omitted).

{17} Application of the preservation rule is limited to alleged errors by the district court; it is unnecessary for the appellee to preserve arguments that support the district court's decision as long as the arguments are not fact based such that it would be unfair to the appellant to entertain those arguments. *State v. Todisco*, 2000-NMCA-064, ¶ 11, 129 N.M. 310, 6 P.3d 1032. Moreover, we will affirm the district court if its decision was "right for any reason," again as long as "reliance on the new ground would [not] be unfair to appellant." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. Because the evidence in the record is sufficient to consider Plaintiff's argument, because we decide the case based on the wording of the agreement subject to a de novo standard of review, and because Defendant does not and cannot dispute the wording of the agreement, we reject Defendant's argument.

### E. Other Arguments

{18} Defendant also argues that the district court erroneously denied its motion on a variety of other grounds. Because we conclude that the Arbitration Agreement is not supported by consideration, we need not reach these arguments.

## CONCLUSION

{19} We hold that the Arbitration Agreement between Plaintiff and Defendant was not supported by consideration. Continued at-will employment is an illusory promise that cannot be consideration. Similarly, Defendant's promise to arbitrate is illusory because it retained the ability to unilaterally change the Arbitration Agreement. Therefore, no contract was formed between Plaintiff and Defendant and the district court properly denied Defendant's Motion to Compel Arbitration or, in the Alternative, to Dismiss. The order of the district court is affirmed.

{20} **IT IS SO ORDERED.**

PICKARD and KENNEDY, JJ., concur.