**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTINE M. PENNINGTON,

      Plainitff - Appellant,

v.

NORTHROP GRUMMAN SPACE &
MISSION SYSTEMS
CORPORATION,

      Defendant - Appellee.

No. 07-2250

D. N.M.

(D.C. No. 2:06-CV-00614-WPL-ACT)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Christine M. Pennington filed suit against her former employer, Northrop

Grumman Space & Mission Systems Corporation ("Northrop Grumman"),

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and New Mexico law. The magistrate judge granted summary judgment in favor of Northrop Grumman and dismissed Pennington's complaint with prejudice, concluding she was bound by the mandatory arbitration clause contained in the Northrop Grumman Dispute Resolution Process ("NG DRP").[1] Pennington claims there are disputed issues of material fact and seeks to expand the record to include her entire deposition transcript, only portions of which were submitted to the magistrate judge. She also renews her legal challenges to the NG DRP. We deny Pennington's motion to expand the record and affirm.

## I. BACKGROUND

In November 1998, Pennington was hired by TRW, Inc. as a graphic designer. Upon commencement of her employment, Pennington received and became bound by the TRW Dispute Resolution Process ("TRW DRP"), which contained an arbitration clause, requiring employees to participate in non-binding arbitration before resorting to litigation. In December 2002, TRW was acquired by, and became a wholly owned subsidiary of, Northrop Grumman Corporation. Northrop Grumman Corporation continued to operate TRW under the name Northrop Grumman Space & Mission Systems Corporation.

On February 9, 2004, Northrop Grumman sent an e-mail to all employees,

---

[1] The parties consented to have their case decided by a magistrate judge under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

including Pennington, announcing the issuance of the NG DRP. The e-mail stated: "For more than 60 years, Northrop Grumman has been a leader in offering non-represented employees an effective grievance process, which includes steps for an internal review of employees and, if needed, the means to enter into binding arbitration." (R. Vol. I, Doc. 10-2, Ex. 1(A).) It continued: "After much consideration, we have revised those processes and are now issuing [the NG DRP] . . . ." (*Id.*) The e-mail informed employees the NG DRP "culminates in final and binding arbitration--binding on both the company and each employee." (*Id.*) Copies of the NG DRP and a mediation and arbitration process guide were attached to the e-mail and were made available on the company's intranet site. The e-mail provided the NG DRP would "become effective companywide on May 10, 2004 (except for those employees represented by labor unions and those not covered by U.S. law)." (*Id.*) It advised employees to review the NG DRP and process guide "carefully and direct any questions you may have to your site Human Resources representative." (*Id.*)

Northrop Grumman terminated Pennington on October 28, 2005. She subsequently filed a charge against Northrop Grumman with the Equal Employment Opportunity Commission (EEOC). She received a right to sue letter from the EEOC on April 10, 2006, and filed this action on July 10, 2006. It is undisputed that Pennington did not demand arbitration prior to filing suit, though her claims fall within the scope of the NG DRP.

Northrop Grumman filed a motion to dismiss, arguing Pennington was bound by the mandatory arbitration clause contained in the NG DRP. The magistrate judge denied the motion, concluding Northrop Grumman had failed to establish the elements of acceptance and mutual assent. After limited discovery, Northrop Grumman filed a motion for summary judgment, again arguing, in pertinent part, Pennington was bound by the arbitration clause contained in the NG DRP. Northrop Grumman stated, as undisputed facts:

11. Pennington regularly received Northrop Grumman company announcements on her e-mail.

12. The e-mail system used by Northrop Grumman allowed Pennington to see who had sent an e-mail before she opened it.

13. Pennington never refused to open e-mails from Northrop Grumman management . . . and it was her habit to open e-mails from Northrop Grumman management.

(R. Vol. I, Doc. 34 at 4-5 (citations omitted).) It argued: "Pennington received Northrop Grumman's offer, and, further, she accepted that offer." (*Id.* at 11.) "Regardless of whether Pennington claims to remember having opened the e-mail, the fact remains that Northrop Grumman sent the e-mail, Pennington received the e-mail, and, as was Pennington's habit, she opened the e-mail." (*Id.* at 13.) In support of its motion, Northrop Grumman submitted excerpts from the transcript of Pennington's deposition.

In her opposition brief, Pennington did not dispute any of the facts set forth by Northrop Grumman. She stated: "For purposes of this Motion, Plaintiff does

not dispute any of the facts set forth in the Defendant's Motion for Summary Judgment. For the reasons, set forth below, none of the facts alleged warrant the entry of judgment in favor of the Defendant." (R. Vol. I, Doc. 37 at 3.) As this quotation reveals, her arguments in opposition to summary judgment were legal, not factual. She claimed the arbitration clause contained in the NG DRP was not enforceable because she did not assent to the NG DRP and because it was not supported by adequate consideration and was unconscionable. She never claimed she did not receive, open or read the February 9th e-mail. Rather, she claimed the e-mail "did not provide sufficient information . . . regarding the Defendant's arbitration policy," was misleading because it spoke at one point of "non-represented employees" rather than "employees not represented by labor unions," and she could not be "bound to arbitrate by simply coming to work."[2] (*Id.* at 7, 9.)

The magistrate judge granted summary judgment in favor of Northrop Grumman, concluding the arbitration clause was valid and enforceable. The judge noted: "None of the excerpted testimony [from Pennington's deposition] deals specifically with whether Pennington received, opened, or read this particular e-mail and its attachments." (R. Vol. I, Doc. 41 at 4-5.) However:

> Pennington has not presented any testimony, by either deposition or
> affidavit, denying that she received, opened, and read the e-mail and

___

[2] Pennington arguably raised a factual issue regarding the clarity of the February 9th e-mail, but never questioned her receipt of the e-mail.

attachments. Moreover, she does not contest the elements of offer and acceptance. Instead, she argues that Northrop Grumman has not established mutual assent because the [e-mail] was insufficiently clear. This argument implicitly indicates that Pennington saw the [e-mail]. Under these circumstances, I conclude that Northrop Grumman has met its summary judgment burden of establishing an offer and acceptance.

(*Id.* at 5.) Thus, the judge dismissed Pennington's complaint with prejudice.[3]

## II. DISCUSSION

Proceeding *pro se*,[4] Pennington contends the magistrate judge erred in granting summary judgment in favor of Northrop Grumman because there are genuine issues of material fact regarding offer, acceptance and mutual assent which should have precluded summary judgment and the court erred by not holding a hearing to resolve those issues. She renews her argument that the NG DRP is unenforceable because it is unconscionable and lacked consideration. Finally, she argues the agreement is unenforceable because she did not knowingly and voluntarily waive a federal forum for her statutory claims.

"We review the district court's grant of summary judgment de novo,

---

[3] Pennington filed a motion to reconsider, arguing the dismissal should have been without prejudice. The magistrate judge denied the motion. Pennington does not renew her argument that the dismissal should have been without prejudice and thus, this argument is waived. *See United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004) ("The failure to raise an issue in an opening brief waives that issue.").

[4] Pennington was represented by counsel before the magistrate judge, but is proceeding pro se on appeal. We liberally construe Pennington's *pro se* appellate filings. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998).

applying the same legal standard used by the district court pursuant to Fed. R. Civ. P. 56(c)." *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1124 (10th Cir. 2000).  Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *Sigmon*, 234 F.3d at 1124-25 (quotations omitted).  "If there is no genuine issue of material fact in dispute, then we must determine if the substantive law was correctly applied by the district court."  *Id.* at 1125.

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Generally, state law principles regarding contract formation govern whether a valid agreement to arbitrate exists.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The parties agree New Mexico law governs whether the arbitration clause contained in the NG DRP is valid and enforceable.

A.  <u>Issues of Material Fact</u>

Under New Mexico law, a contract is legally enforceable if it is "factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 918 P.2d 7, 10 (N.M. 1996) (quotations omitted); *see also Piano v. Premier Distrib. Co.*, 107 P.3d 11, 14 (N.M. Ct. App. 2004) (applying this test to an arbitration agreement in the employment context). Pennington claims there are genuine issues of material fact regarding offer, acceptance and mutual assent which should have precluded summary judgment. She seeks to expand the record on appeal to include portions of her deposition transcript which she claims would reveal:

2. Pennington has Dyslexia . . .

12. Anybody could use the computer of Chris Pennington and use Penningtons [sic] work space

13. Pennington's computer was on almost constantly and was used for e-mail by Northrop Grumman and TRW

17. Pennington was ordered by management TRW and Northrop Grumman to leave her computer on for temporary and other employees to use it and it became policy

18. Pennington was at home when others were using her computer

19. Pennington's computer as long as it was on, allowed anyone access to Pennington's E-mail account

20. Pennington states the reason she didn't remember seeing E-mails from HR was that she was not the only person using her computer

23. Pennington saved e-mails from Northrop Grumman HR and Management on her computer, backup to CD's and sent the e-

mails home to her computer.

24. Pennington provided to Northrop Grumman copies of all the e-mails saved from 2004 to 2005 and the February 9, 2004 Northrop Grumman E-mail was not among them.

(Appellant's Opening Br. at 2, 2-2 (citations omitted).)  Though, as recognized by the magistrate judge, Pennington implicitly acknowledged receiving the February 9th e-mail, she now claims she "never received the e-mailed Arbitration Agreement/Contract's."  (Appellant's Reply Br. at 23.)

Generally, "our review is confined to an examination of materials before the lower court at the time the ruling was made . . . ." *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475 (10th Cir. 1993) (quotations and emphasis omitted).  Pursuant to Rule 10(e)(1) of the Federal Rules of Appellate Procedure, a party may modify the record if there is a question as to "whether the record truly discloses what occurred in the district court."  This rule does not, however, "grant a license to build a new record." *Anthony v. United States*, 667 F.2d 870, 875 (10th Cir. 1981).  In *Allen*, we denied an appellant's motion to supplement the record with the full transcript of a deposition.  8 F.3d at 1474.  We stated:

> In responding to the defendants' motion for summary judgment below, [the appellant] was entitled to designate, *inter alia*, any parts of the [ ] deposition purportedly establishing triable issues of fact. Portions of the deposition not filed below or presented to the district court could not properly be considered by the court and, *ipso facto*, cannot be considered by us in reviewing the court's judgment . . . .

*Id.* at 1475.

In *United States v. Kennedy*, we recognized that "under some circumstances, we have an inherent equitable power to supplement the record on appeal." 225 F.3d 1187, 1192 (10th Cir. 2000). We described this inherent power as a "rare exception to Rule 10(e)" and declined to apply it in that case. *Id*. We applied the exception in *United States v. Balderama-Iribe*, permitting the government to supplement the record with a letter from the prosecutor which clarified his misstatement at the pretrial hearing and "clearly inform[ed] defense counsel that Balderama-Iribe faced a mandatory life sentence if convicted . . . ." 490 F.3d 1199, 1202 n.4 (10th Cir. 2007). We noted there was no reason why the government would have submitted this letter to the district court because the defendant did not object in the district court to the mandatory life sentence on the basis of the prosecutor's misstatement. *Id.*

Here, Pennington's motion to expand the record does not present the "rare exception" to Rule 10(e), but falls squarely within that rule and our cases interpreting it. There is no indication Pennington's failure to submit the complete transcript of her deposition to the magistrate judge resulted from error or accident. *See Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1177 n.2 (10th Cir. 2000) (denying plaintiff's motion to supplement the record where plaintiff "[did] not argue that the omission . . . was the result of either error or accident"). Pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure, a party opposing a properly made and supported motion for summary judgment

"must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Had Pennington wanted to raise an issue of fact, she was required to do so in her opposition brief. Pennington was represented by counsel and we see no reason why she should be excused from compliance with the federal rules.

Pennington also claims the magistrate judge erred by not holding a hearing to resolve the disputed issues of material fact. As we just noted, the judge was not called upon to resolve issues of fact as Pennington's arguments against enforcement of the NG DRP were purely legal. Where, as here, there is nothing in the record to suggest the issues presented in a summary judgment motion cannot be addressed adequately in the form of written briefs and supporting documents, the court is not required to hold a formal hearing. *See Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir. 1988).

B. Unconscionability

Pennington claims the NG DRP is unconscionable. In support of this argument, she seeks to rely, in part, on the arguments she made to the magistrate judge.[5] There, she argued the agreement was unconscionable because the terms

_____

[5] Northrop Grumman contends Pennington cannot adopt the arguments she made before the magistrate judge without specifically setting them forth in her appellate brief. In *Gaines-Tabb v. ICI Explosives, USA*, we stated: "Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules and

were overly favorable to Northrop Grumman and she had no meaningful choice but to agree to them because her only other option was to quit.[6]  Under New Mexico law, a finding of unconscionability requires both a procedural and substantive showing.  A contract may be unconscionable "[i]f there has been an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Guthmann v. LaVida Llena*, 709 P.2d 675, 679 (N.M. 1985) (quotations omitted).  The magistrate judge correctly concluded Pennington established neither of these required elements.

A contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent."  *Id.*  The fact that

---

unnecessarily complicate the task of an appellate judge."  160 F.3d 613, 624 (10th Cir. 1998) (citations omitted).  While an appellant's pro se status does not excuse her from the obligation to comply with the same procedural rules that govern other litigants, *see Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), we will consider the arguments Pennington made before the magistrate judge.

[6]  Pennington also claims the NG DRP is unconscionable because it provides a 180-day limit for demanding arbitration and does not allow a party to benefit from tolling that may be available under federal or state law.  Pennington did not raise this argument before the magistrate judge and we will not consider it here.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (to be considered on appeal, an issue must "be presented to, considered and decided by the trial court") (quotations omitted).  In any event, the magistrate judge refused to consider whether Pennington's claims were barred on account of her failure to submit them to arbitration within the limitations period, concluding that was a procedural question to be determined by the arbitrators.

Northrop Grumman imposed the NG DRP as a condition of continued employment does not render the NG DRP procedurally unconscionable. *See, e.g.*, *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002) ("Because an employer has a general right . . . to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms."). A contract is substantively unconscionable only if the terms are "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." *Guthmann*, 709 P.2d at 680 (quotations omitted). The fact that the terms of the NG DRP may favor Northrop Grumman over its employees does not make the agreement substantively unconscionable. *See, e.g.*, *Monette v. Tinsley*, 975 P.2d 361, 365 (N.M. Ct. App. 1999) ("The terms here, while imbalanced, did not rise to a level of unconscionability."). Unless "no honest and fair man" would accept the NG DRP, it is not unconscionable. Pennington has failed to make the required showing.

C. Consideration

Pennington also claims the NG DRP is not supported by "adequate consideration." (Appellant's Opening Br. at 3-12.) However, as Northrop Grumman points out, consideration is required, but in no particular measure: "[Y]ou either have consideration or you do not, and the amount of consideration is not an issue." *Richards v. Allianz Life Ins. Co. of N. Am.*, 62 P.3d 320, 325

-13-

(N.M. Ct. App. 2002). Therefore, we will treat Pennington's argument as contesting the presence, not the adequacy, of consideration. Under New Mexico law, a contract must be supported by consideration. *Garcia*, 918 P.2d at 10. "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Piano*, 107 P.3d at 14 (quotations omitted). "However . . . when a promise, in reality, promises nothing--it is illusory, and it is not consideration." *Id.* (quotations omitted).

Northrop Grumman contends consideration exists in the form of its reciprocal agreement to arbitrate. In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued. *See Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Sisneros v. Citadel Broad. Co.*, 142 P.3d 34, 43 (N.M. Ct. App. 2006) (holding an arbitration agreement was not illusory because the employer and employee had mutual obligations to arbitrate and the employer did not have the right to terminate the arbitration agreement once an employee's claim accrued).

The record does not reflect whether Northrop Grumman retained the

authority to terminate or modify the NG DRP once an employee's claim had accrued. In any case, Pennington does not challenge the NG DRP on this ground. Rather, she contends the NG DRP lacks consideration because employers rarely pursue civil claims against employees and Northrop Grumman did not represent it would seek arbitration in lieu of a criminal action against an employee. Pennington does not cite to case law indicating an agreement to arbitrate lacks consideration where one party is more likely to use it than another. Like the magistrate judge, we conclude the reciprocal obligation to arbitrate provides the requisite consideration.

D. Waiver of Federal Forum

Finally, Pennington claims the NG DRP is unenforceable because she did not knowingly and voluntarily agree to waive a federal forum for her statutory claims. Northrop Grumman contends Pennington waived this argument by not raising it in opposition to its motion for summary judgment. Without citing to the record, Pennington claims her counsel "asked for an evidentiary hearing on this point and was not granted one." (Appellant's Opening Br. at 3-20.) While her counsel did indeed make this argument in opposition to Northrop Grumman's motion to dismiss, he did not make it in opposition to Northrop Grumman's motion for summary judgment. Because the magistrate judge was not called upon to determine this issue, we will not consider it. *See Singleton*, 428 U.S. at 120; *Lyons*, 994 F.2d at 721.

-15-

We **DENY** Pennington's motion to expand the record and **AFFIRM** the grant of summary judgment to Northrop Grumman.

ENTERED FOR THE COURT

Terrence L. O'Brien
Circuit Judge