This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39168

**MICHAEL T. STEELE,**

Plaintiff/Counterdefendant-Appellee,

v.

**GALLES CHEVROLET,**

Defendant/Counterplaintiff-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Court Judge**

The Gilpin Law Firm LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellee

Sutin, Thayer & Browne
Christina M. Gooch
Jessica R. Martin
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Defendant Galles Chevrolet (Galles) appeals the district court's order denying its motion to compel arbitration and stay proceedings. We affirm.

**DISCUSSION**

**{2}** Plaintiff Michael Steele sued Galles for breach of contract for unpaid commissions during his employment with Galles. In response, Galles filed a motion to compel arbitration and stay proceedings, contending that, by signing an Employee Acknowledgement and Agreement (Arbitration Agreement), Steele agreed that he and Galles would pursue arbitration for any claims arising from his employment with Galles. The district court denied Galles's motion, concluding that Galles's promise to arbitrate claims was illusory and, as a result, the Arbitration Agreement failed for lack of consideration. On appeal, Galles argues the district court erred because its promise to arbitrate was not illusory. In the alternative, Galles, citing a severance provision in the Arbitration Agreement, argues the district court erred by not severing unenforceable sections of the Arbitration Agreement and enforcing the remainder of the Arbitration Agreement. We perceive no error.

## I. Standard of Review and Applicable Law

**{3}** "[W]hether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 4, 137 N.M. 57, 107 P.3d 11. A district court's denial of a motion to compel arbitration also is reviewed de novo. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. Notwithstanding our de novo review, it remains the appellant's burden to persuade us that the district court erred—not the appellee's burden to persuade us that it did not. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that a trial court's actions are presumed to be correct and that an appellant "must affirmatively demonstrate" the trial court erred); *Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 30, 122 N.M. 103, 920 P.2d 1057 (providing that an "answer brief need not specifically answer each assignment of error made by appellant" and the failure of an answer brief to do so is not in itself grounds for reversal).

**{4}** While, as Galles observes, New Mexico favors resolving disputes through arbitration, "a legally enforceable contract is a prerequisite to arbitration; without such a contract, parties will not be forced to arbitrate." *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495. A legally valid, enforceable contract requires an offer, acceptance, consideration, and mutual assent. *Id.* ¶ 9. Although, as Galles contends, a mutual promise to arbitrate may be adequate consideration to support an arbitration agreement, *see Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 18, 302 P.3d 751, "a promise that puts no constraints on what a party may do in the future—in other words, when a promise, in reality, promises nothing—it is illusory, and it is not consideration," *Piano*, 2005-NMCA-018, ¶ 6 (internal quotation marks and citation omitted); *accord Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 29, 303 P.3d 814 ("A party's promise to arbitrate is . . . illusory where it retains the ability to unilaterally change the arbitration agreement."). Thus, "[u]nder general New Mexico contract law, an agreement that is subject to unilateral modification or revocation is illusory and unenforceable." *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶ 9, 135 N.M. 447, 90 P.3d 466; *see also Luginbuhl*, 2013-NMCA-053, ¶ 17 (providing that

"a lack of consideration for an arbitration agreement is most commonly found when the employer has the unilateral right to modify the arbitration clause").

## II. The District Court Did Not Err by Denying Galles's Motion to Compel Arbitration

{5}     Two provisions in the Arbitration Agreement are relevant to our resolution of this appeal. First is what we label the "retention of rights" provision:

> I understand . . . that any and all policies or practices can be changed at any time by the Company. The Company retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of "at-will employment" and Arbitration Agreement, which may not be changed, altered, revised or modified without a writing signed by the President of the Company).

Second is what we label the "new agreement" provision:

> It is further agreed and understood that any agreement contrary to the foregoing must be entered into, in writing, by the President of the Company.

{6}     This Court in *Piano* interpreted language practically identical to the retention of rights provision before us today. *See* 2005-NMCA-018, ¶ 12 ("The [c]ompany retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of 'at-will employment' and [a]rbitration [a]greement, which may not be changed, altered, revised or modified unless in writing and signed by the [o]wner of the [c]ompany)."). *Piano* held that the most natural reading of such language is that the company "in its sole discretion, [may] modify the terms of the [a]rbitration [a]greement provided that it complies with the minimal formalities set forth"—i.e., a writing signed by the owner of the company. *Id.* And because the agreement in *Piano* provided "unilateral authority to modify the [a]rbitration [a]greement" to the company, without requiring any approval or participation from the plaintiff, this Court held that the company's promise to arbitrate was illusory—i.e., not consideration. *Id.* ¶ 14; *see also Heye*, 2003-NMCA-138, ¶ 15 (concluding that the employer's promise to arbitrate was illusory because the agreement permitted it to "selectively abide by its promise to arbitrate," and thus, the employer's promise did not "provide the consideration necessary to enforce the arbitration agreement"). Applying *Piano* to this case, the retention of rights provision permits Galles, in its sole discretion, to "change[], alter[], revise[] or modif[y]" the Arbitration Agreement, subject only to the limitation that this occur in "a writing signed by the President of the Company." *See* 2005-NMCA-018, ¶ 12. Such unilateral authority to modify the Arbitration Agreement renders Galles's promise to arbitrate illusory under *Piano*. *See id.* ¶ 14.

{7}     In an attempt to avoid application of *Piano* to this case, Galles contends that it "cannot unilaterally modify its promise to arbitrate." In support, Galles cites the new

agreement provision, which, as stated, provides that "any agreement contrary to the foregoing must be entered into, in writing, by the President of the Company." Galles argues that the word "agreement" mandates both Steele and the president of Galles to "mutually assent to any agreement contrary to the arbitration provision." Even if we accept Galles's interpretation of the new agreement provision,[1] it ultimately does not assist Galles. We explain.

**{8}** We must apply the plain meaning of the language used in the Arbitration Agreement. *See Pueblo of Laguna v. Cillessen & Son, Inc.*, 1984-NMSC-060, ¶ 12, 101 N.M. 341, 682 P.2d 197 (providing that courts "interpret the provisions of arbitration agreements by the rules of contract law" and "apply the plain meaning of the language utilized"). Doing so reveals an ambiguity. As discussed, the plain terms of the retention of rights provision requires only "a writing signed by the President of the Company" to change, alter, revise or modify the Arbitration Agreement. *See Piano*, 2005-NMCA-018, ¶ 12. In contrast, the new agreement provision—as interpreted by Galles—makes modifications of the Arbitration Agreement permissible only upon the assent of Steele and the president of Galles. In light of these disparate requirements, we conclude the Arbitration Agreement is ambiguous. *See Heye*, 2003-NMCA-138, ¶ 14 ("We construe the language of the entire contract as a whole. A contract is ambiguous if separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning." (citation omitted)).

**{9}** Anticipating we might conclude that the Arbitration Agreement is ambiguous, Galles submits that the new agreement provision can be read consistently with the retention of rights provision to require mutual assent of both Steele and the president of Galles. In advancing this argument, however, Galles overlooks the construction of the retention of rights provision in *Piano*. Moreover, Galles ignores that the two provisions, when read together, are susceptible of an opposite interpretation: that Galles's unilateral modification of the Arbitration Agreement, pursuant to the retention of rights provision, is not "contrary to" the Agreement, and thus would never trigger the new agreement provision's requirement that Steele and the president of Galles mutually assent to the change. Given this, and in light of Galles's failure to advance an otherwise developed argument on this point, we find Galles's argument that these provisions do not create an ambiguity unpersuasive.[2]

---

1We accept Galles's interpretation solely for the purpose of deciding this appeal.

2Galles's citation to *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322 (S.D.N.Y. 2014), a nonprecedential, out-of-state case, dealing with provisions similar to those at issue in this case, does not alter our analysis. It is true that the "new agreement" provision in *Marciano* is similar to the one in this case. *See id.* at 336 ("No implied, oral or written agreements contrary to the express language of this agreement are valid unless they are in writing and signed by the [p]resident of the [c]ompany."). The "retention of rights" provision in *Marciano*, however, differs in a critical way from the one applicable to this case. In particular, the agreement in *Marciano* explicitly excluded the arbitration agreement from the policies the company could unilaterally modify. *Id.* ("[A]ll terms and conditions of my employment, *with the exception of the arbitration agreement*, may be changed or withdrawn at the [c]ompany's unrestricted option at any time, with or without good cause." (emphasis added)). This is unlike the retention of rights provision here, which allows Galles to unilaterally modify the arbitration agreement by way of "a writing signed by the President of the Company." Thus, the ambiguity that exists in the Arbitration Agreement in this case is simply not at issue in *Marciano*

**{10}** "We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it." *Heye*, 2003-NMCA-138, ¶ 14. Given Galles's own characterization of the Arbitration Agreement as a "condition of [Steele's] continued employment," "[w]e think it fair to assume" Galles drafted the agreement, especially because "there is no suggestion that [Galles] sought or received any input from [Steele] in connection with the drafting of the language." *See id.* ¶ 15. We accordingly construe the ambiguity in the Arbitration Agreement against Galles. *See id.* ¶¶ 14-15 (selecting the interpretation of the contract advanced by the employee); *Piano*, 2005-NMCA-018, ¶ 13 (same). Under this construction, Galles "remains free to selectively abide by its promise to arbitrate." *See Heye*, 2003-NMCA-138, ¶ 15.

**{11}** We thus agree with the district court that Galles's promise to arbitrate was illusory and does not provide the consideration necessary to enforce the arbitration agreement. *See id.*; *Piano*, 2005-NMCA-018, ¶ 14. Finally, because a valid arbitration agreement was never formed between the parties, we decline Galles's invitation to excise language from the Arbitration Agreement such that it could be supported by consideration. *See Piano*, 2005-NMCA-018, ¶ 15 (declining the defendant's "invitation to rewrite the [a]rbitration [a]greement such that it is supported by consideration").

## CONCLUSION

**{12}** For the foregoing reasons, we affirm.

**{13}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**

---

and, as a result, *Marciano* is of little persuasive value. Further, Galles's suggestion in its reply brief that *Marciano* controls our analysis because Steele "failed to refute its applicability" is without merit. *See Lozano*, 1996-NMCA-074, ¶ 30.