This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39586**

**JAMES SANDERSON, Deceased, by the
Personal Representative of the Wrongful
Death Estate, ERIN PEARSON,**

      Plaintiff-Appellee,

v.

**GENESIS HEALTHCARE, INC.; GENESIS
HEALTHCARE, LLC; GENESIS
ADMINISTRATIVE SERVICES, LLC;
ST. CATHERINE HEALTHCARE AND
REHABILITATION CENTER, LLC; and
KAREN JENKINS, Administrator,**

      Defendants-Appellants,

and

**AISHA JONES, LLC and AISHA JONES,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Benjamin Chavez, District Court Judge**

Harvey and Foote Law Firm, LLC
Jennifer J. Foote
Dusti Harvey
Albuquerque, NM

for Appellees

Quintairos, Prieto, Wood & Boyer, P.A.
Frank Alvarez
Jo Beth Drake

Dallas, TX

for Appellants

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Genesis Healthcare, Inc., Genesis HealthCare LLC, Genesis Administrative Services, LLC, Summit Care, LLC, St. Catherine Healthcare and Rehabilitation Center, LLC, and Karen Jenkins, Administrator (collectively, Defendants) appeal the district court's denial of their motion for reconsideration to compel arbitration or, alternatively, to compel discovery. At issue is whether Plaintiff Erin Pearson, the personal representative of her father's wrongful death estate, had authority to bind her father, James Sanderson (Mr. Sanderson), to a Voluntary Binding Arbitration Agreement (the Agreement) signed as part of Mr. Sanderson's admission paperwork to Bear Canyon Rehabilitation Center (the Center). Defendants argue the district court erred by refusing to enforce the Agreement and denying Defendants' motion to compel discovery related to Plaintiff's authority to sign the Agreement. For the following reasons, we affirm.

**BACKGROUND**

**{2}** This case arises from a wrongful death and negligence suit based on Mr. Sanderson's stay at the Center. As part of Mr. Sanderson's admission paperwork to the Center, Plaintiff signed the Agreement on Mr. Sanderson's behalf. Mr. Sanderson passed away during his stay and Plaintiff, in her capacity as the personal representative of his wrongful death estate, filed suit on behalf of the estate. Defendants moved to compel arbitration and—without requesting discovery from Plaintiff—requested that the court give them "an opportunity to conduct limited discovery on the arbitration dispute." During the motion hearing, the district court noted that it "did not receive a motion to continue the hearing so that [Defendants] could be given further discovery," that Defendants "did not make an actual request for additional medical records," and that it "did not receive any kind of motion to compel discovery." The district court entered an order denying Defendants' motion to compel arbitration, concluding that "Defendants failed to meet their burden establishing that [Plaintiff] had authority to bind Mr. Sanderson." Defendants filed a motion for reconsideration or, alternatively, a motion to compel discovery on the Agreement. The district court denied the motion, leading to this appeal.

**DISCUSSION**

**I.     The District Court Did Not Err in Refusing to Enforce the Agreement**

**{3}** Defendants argue that the district court erred in refusing to submit the question of arbitrability to arbitration and concluding that Plaintiff had no authority to bind Mr.

Sanderson to the Agreement.[1] We address each issue in turn, applying a de novo standard of review. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901 ("We apply a de novo standard of review to a district court's denial of a motion to compel arbitration. Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." (internal quotation marks and citations omitted)).

## A.      The District Court Did Not Err in Refusing to Submit the Issue of Arbitrability to Arbitration

**{4}**      "Gateway questions of arbitrability typically involve matters of a kind that contracting parties would likely have expected a court to decide, such as the validity of an arbitration provision, the scope of an arbitration provision, or whether an arbitration agreement covers a particular controversy." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124. "The general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is clear and unmistakable evidence that the parties decided otherwise under the terms of their arbitration agreement." *Hunt v. Rio at Rust Ctr., LLC*, 2021-NMCA-043, ¶ 13, 495 P.3d 634 (internal quotation marks and citation omitted). Nevertheless, "even if there is a clear and unmistakable intent to arbitrate, a court may still consider a challenge to the delegation clause in an arbitration agreement" if a party "specifically challenge[s] the delegation provision." *Id.*, ¶ 22. Moreover, the delegation provision itself "is simply an additional, antecedent agreement the party seeking arbitration asks the [district] court to enforce." *Felts,* 2011-NMCA-062, ¶ 18 (internal quotation marks and citation omitted). Thus, general principles of contract interpretation apply to prove that the arbitration provision was validly formulated. *See Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-332, ¶¶42-45, 304 P.3d 409 (applying general principles of contract interpretation to determine whether the party seeking to enforce arbitration proved the formation of a valid contract).

**{5}**      Defendants argue that Plaintiff failed to specifically challenge the delegation clause as "unconscionable, unclear, fraudulent, or even ambiguous." Plaintiff responds that she specifically challenged the delegation clause below by arguing (1) she had "no[] authority to bind Mr. Sanderson to the delegation clause," and therefore the clause was void; and (2) the clause was procedurally unconscionable. The district court agreed with Plaintiff's second challenge, finding that Plaintiff specifically attacked the delegation clause as unconscionable. We agree that Plaintiff specifically attacked the delegation

---

1Defendants also contend that the Agreement must be enforced because Plaintiff should "be estopped from taking a new and opposite position" after she actively represented and insisted that she had authority to act as Mr. Sanderson's power of attorney. Defendants, however, do not develop this argument around the principle of equitable estoppel. Because this argument is not adequately developed, we decline to address it further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 58, 492 P.3d 586, 604-05 ("As a general rule, appellate courts rely on adversarial briefing to decide legal issues and avoid reaching out to construct legal arguments that the parties, intentionally or otherwise, have not presented.").

clause, however, we hold that Plaintiff did so by challenging her authority to enter into the Agreement and bind Mr. Sanderson to the delegation clause. *See Lynn Hawkins v. McDonald's*, 2014-NMCA-048, ¶ 23, 323 P.3d 932, ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). We explain.

**{6}** In *Felts*, we noted that the United States Supreme Court had "established that challenges to the validity of arbitration provisions fall within two categories: (1) those challenging specifically the validity of the agreement to arbitrate; and (2) those challenging the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 2011-NMCA-062, ¶ 19 (alterations, internal quotation marks, and citation omitted). Only the first type of challenge—the challenge to the validity of the agreement to arbitrate—is for the courts to decide. *Id.* Defendants contend that Plaintiff's challenge falls in the second category—the challenge to the contract as a whole—because it "simply mimics the same challenges over authority to enter the overall contract."

**{7}** However, in *Felts*, this Court determined that the delegation clause is properly challenged if "the challenge to the arbitration provision is severable from the challenge to the contract as a whole." *Id.* ¶ 31. Even where the arbitration provision is challenged on the same basis as the contract as a whole, so long as the challenge is specifically directed to the agreement to arbitrate, the court will consider it. *See Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 71 (2010) (stating that if a party challenges the validity of the precise agreement to arbitrate at issue, the court must consider the challenge before ordering compliance with that agreement.) *Felts,* 2011-NMCA-062, ¶¶ 31-33. Thus, neither *Rent-A-Center* nor *Felts* demands that the challenge to the arbitration agreement's validity be made on a different legal basis than the challenge to the validity of the contract as a whole. We therefore consider Plaintiff's challenge to her authority to enter into the Agreement separately from her challenge to the validity of the remainder of the contract. *See Salazar v. Citadel Comm'ns Corp.*, 2004-NMSC-013, ¶ 8, 135 N.M. 447, 90 P.3d 466 (stating "a prerequisite to compelling arbitration is the existence of a valid agreement to arbitrate"); *see also Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 8, 134 N.M. 558, 80 P.3d 495.

**{8}** Thus, we conclude the district court is the appropriate venue to decide the gateway question of arbitrability in this case—that is, whether Plaintiff had authority to bind Mr. Sanderson to the Agreement to arbitrate.

**B.    The District Court Did Not Err in Concluding Plaintiff Lacked Authority to Bind Mr. Sanderson to the Arbitration Agreement**

**{9}** Defendants contend that the district court erred in denying its motion to compel arbitration because Plaintiff acted with actual and apparent authority when she signed

the Agreement. "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *DeArmond v. Halliburton Energy Servs.*, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573 (internal quotation marks and citation omitted). Under principles of agency, an agent's agreement to a contract may bind the principal. *See MPC Ltd. v. N.M. Tax'n & Revenue Dep't*, 2003-NMCA-021, ¶ 30, 133 N.M. 217, 62 P.3d 308 (stating that in an agency relationship the agent has the power to bind the principal in dealings with third parties). "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair, or does some service for the principal, with or without compensation." *Barron v. Evangelical Lutheran Good Samaritan Soc.*, 2011-NMCA-094, ¶ 16, 150 N.M. 669, 265 P.3d 720 (alteration, internal quotation marks, and citation omitted). The party asserting the existence of an agency relationship bears the burden of establishing such a relationship. *Corona*, 2014-NMCA-071, ¶ 22. Actual authority arises from the principal's express terms or in terms that are "implied from words or conduct of the principal to the agent or from the circumstances of the relationship." *Barron*, 2011-NMCA-094, ¶ 16. Conversely, apparent authority arises from "manifestations by the principal to the third party and can be created by appointing a person to a position that carries with it generally recognized duties." *Id.* (internal quotation marks and citation omitted). A principal is bound by the acts of his or her agent whether acting with actual or apparent authority. *Id.* Specifically, "in considering the scope of an agent's apparent authority, New Mexico courts look to the reasonableness of the third party's reliance on the agent's representation of authority." *Id.*

**{10}** Defendants contend that Plaintiff acted with actual authority because Mr. Sanderson signed the power of attorney. Plaintiff does not dispute that Mr. Sanderson signed the power of attorney; however, she argues that Defendants did not meet their burden to establish Mr. Sanderson's incapacity, which is required to trigger the power of attorney as per NMSA 1978, Section 45-5B-109 (2007). Defendants respond that a physician's "formal certificate" is not required and that the proffered "evidence from physicians" was sufficient to trigger the power of attorney. We are unpersuaded by Defendants' argument.

**{11}** Neither party disputes that, if active, the general power of attorney would have been sufficient for Plaintiff to bind Mr. Sanderson to arbitration[2]; at issue, then, is whether the conditions precedent to activate the general power of attorney were met. The power of attorney trigger provision provides:

---

[2]Defendants initially argue that both the healthcare and general power of attorney "granted [Plaintiff] sufficient authority" to bind Mr. Sanderson to the Agreement. Defendants, however, fail to argue that the healthcare power of attorney was active at the time Plaintiff signed the Agreement. We therefore focus our analysis on the general power of attorney and whether it was active and granted Plaintiff authority to sign the Agreement.

This power of attorney shall become effective upon, and be effective during the time I am considered to be an "incapacitated person" as defined by [NMSA 1978, Section] 45-5-101(F) [2019[3]] which shall be deemed to mean that I have demonstrated over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that I am unable to manage my personal affairs or I am unable to manage my estate or financial affairs or both. My attorney shall be entitled to rely on a written certificate from a licensed physician as to my incapacity.

**{12}** Defendants argue that the power of attorney "should be interpreted under contract law." Thus, Defendants contend, a licensed physician's written certificate is not necessarily required because the "four corners of the contract" only "entitle[]"—without requiring—Plaintiff to rely on one. Defendants, however, fail to consider the Uniform Power of Attorney Act (the Act), NMSA 1978, §§ 45-5B-101 to -403 (2011), which governs the general power of attorney in our case. *See* § 45-5B-103 (listing the powers of attorney the Act does not apply to). "If a power of attorney becomes effective upon the principal's incapacity and the principal has not authorized a person to determine whether the principal is incapacitated," Section 45-5B-109 of the Act prescribes who can make the incapacity determination to activate a power of attorney. In such case, "a physician or licensed psychologist" may make a determination that the principal is incapacitated, defined as being unable to "manage the individual's estate or financial affairs." *See id.* (prescribing when a power of attorney is effective); § 45-5B-102(E) (defining "incapacity").

**{13}** Defendants fail to discuss the directives in Section 45-5B-109 and simply reference the provision in a parenthetical stating, "The Uniform Power of Attorney Act allows a condition precedent to be made 'in a writing or other record,' which can be inscribed on any tangible medium or stored electronically." Defendants' reference, however, ignores that Section 45-5B-109 specifically requires a "determination" of incapacity. *See Determination*, *Black's Law Dictionary* (11th ed. 2019) ("The act of deciding something *officially* [or t]he act of finding the precise level, amount, or cause of something." (emphasis added)). Based on the statute's language requiring a "determination" of incapacity by a physician or licensed psychologist, we conclude the Legislature did not intend for powers of attorney to be triggered by *any* medical documents that could reasonably be interpreted to mean that the patient is functionally impaired. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 ("We use the plain language of the statute as the primary indicator of legislative intent." (alteration, internal quotation marks, and citation omitted)). Here, there was no official determination by a physician or licensed psychologist as required by Section 45-5B-109. The diagnosis by Letitia Kinlock, MD, that Mr. Sanderson suffered "dementia with rapid decline" coupled with other medical documents on which Defendants rely are insufficient to constitute the official determination necessary to trigger the power of

---

[3]Section 45-5-101(F) defines "incapacitated person" by using the same language used in this trigger provision.

attorney, contrary to Defendants' argument on appeal. *See* § 45-5B-109. Defendants, therefore, did not meet their burden to establish Mr. Sanderson's incapacity with an official determination, and thus, Plaintiff did not have actual authority to bind Mr. Sanderson to the Agreement.

**{14}** Turning to apparent authority, any representation by Plaintiff that her father was incapacitated and she had authority under the power of attorney are insufficient. It is well settled in New Mexico that apparent authority must be based upon words or acts of the principal, not the agent. *Tercero v. Roman Cath. Diocese of Norwich, Conn.t*, 2002-NMSC-018, 132 N.M. 312, 48 P.3d 50 ¶ 12. Furthermore, even if Plaintiff "submitted the [power of attorney] to Mr. Sanderson's behavioral health clinic[] purporting to show she was legally empowered to as an agent," Defendants cannot rely on the power of attorney alone for the representation that "incompetency of a general permanent nature ha[d] been shown," as Defendants contend. As we explained, the controlling Act requires a medical determination by a physician. *See* § 45-5B-109. The district court did not err in finding that Defendants failed to meet their burden establishing Plaintiff had apparent authority to bind Mr. Sanderson to the Agreement.

**{15}** Similarly, Defendants' reliance on Plaintiff's representations are insufficient to enforce the Agreement. Defendants argue that they relied on the power of attorney in good faith because they "made a reasonable inquiry, [Plaintiff] reiterated her authority by completing a [r]epresentative [d]esignation form, and [Plaintiff] expressed her authority to complete other admission forms." The power of attorney provides that "[a]ny person, including my agent, may *rely* upon the validity of this power of attorney or a copy of it unless that person knows it has terminated or is invalid." (Emphasis added.) Section 45-5B-119(C) similarly states, "A person that in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is void, invalid or terminated . . . may *rely* upon the power of attorney as if the power of attorney were genuine, valid and still in effect." (Emphasis added.) Both the power of attorney and statute require that Defendants rely on the power of attorney for the good faith protection to apply.

**{16}** Defendants, however, only point to Plaintiff's representations as support for their reliance on the power of attorney. As we established above, Defendants cannot rely solely on Plaintiff's representations because they are insufficient to constitute apparent authority. Moreover, Defendants fail to provide evidence that they undertook further inquiry beyond relying on Plaintiff's representations. Grace Lucero-Tarin's affidavit states that Plaintiff signed the "Representative Designated" statement "representing she had permission to sign [the] Agreement" and that "[Plaintiff] provided [the Center] with documents signed by [Mr.] Sanderson showing she was his representative." However, Mr. Sanderson's signed powers of attorney require an official incapacity determination, putting Defendants on notice that further inquiry was required. Based on the evidence presented, Defendants have not persuaded us that they used reasonable diligence in ascertaining whether the power of attorney had been triggered as required by Section 45-5B-109. *See Comstock v. Mitchell*, 1990-NMSC-054, ¶ 4, 110 N.M. 131, 793 P.2d 261 ("[A] person dealing with an agent must use reasonable diligence and prudence to

ascertain whether the agent is acting within the scope of his powers."); *see Corona*, 2014-NMCA-071, ¶ 22 ("A plaintiff bears the burden of showing that there was an agency relationship.").

**{17}** In sum, Defendants failed to carry their burden of demonstrating a valid arbitration agreement, treating the Agreement as a separate, severable contract as required by *Rent-A-Center* and *Felts*. *See Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 3. ("The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement.") The district court therefore properly denied Defendants' motion to compel arbitration.

## II.     The District Court Did Not Err in Denying Defendants' Motion to Compel Discovery

**{18}** We now consider Defendants' final issue on appeal—their claim that the district court erred by failing to allow them to conduct discovery. We review discovery orders for abuse of discretion. *Pincheira v. Allstate Ins. Co.*, 2007-NMCA-094, ¶ 27, 142 N.M. 283, 164 P.3d 982, *aff'd on other grounds*, 2008-NMSC-049, 144 N.M. 601, 190 P.3d 322. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). It is Defendants who "bear[] the burden of demonstrating that the [district] court abused its discretion." *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 36, 126 N.M. 196, 967 P.2d 1136.

**{19}** Defendants contend that the district court erred by denying their request to pursue discovery regarding Plaintiff's authority to bind Mr. Sanderson to the Agreement. Defendants requested the district court to provide them "an opportunity to conduct limited discovery on the arbitration dispute" before moving to compel discovery. As the district court noted, however, at this point, Defendants had not requested discovery from Plaintiff nor moved for a continuance to conduct or compel discovery. Defendants contend that they submitted this discovery request to the district court instead of requesting discovery from Plaintiff because they sought to avoid "waiv[ing] arbitration by conducting discovery unilaterally." Defendants, however, could have requested discovery after their motion to compel arbitration without waiving arbitration. *See Wood v. Millers Nat. Ins. Co.*, 1981-NMSC-086, ¶ 7, 96 N.M. 525, 632 P.2d 1163. ("The mere instigation of legal action is not determinative for purposes of deciding whether a party has waived arbitration. The point of no return is reached when the party seeking to compel arbitration invokes the court's discretionary power, *prior to demanding arbitration*, on a question other than its demand for arbitration." (emphasis added)). Once Defendants filed their motion to compel arbitration, they could have obtained information relevant to Mr. Sanderson's capacity without waiving arbitration. *See id.*

**{20}** Moreover, Defendants were provided documents that could potentially be relevant to Mr. Sanderson's capacity. Defendants received discovery documents relating to Mr. Sanderson's medical condition as part of Plaintiff's response to discovery

requests from another defendant. These documents informed Defendants of additional discovery materials available to meet their burden of proving Mr. Sanderson's incapacity. The parties dispute the date when Defendants received these documents. Plaintiff argues that she served the responses to the discovery requests on February 24, 2020. Defendants argue that they received a "hard copy by mail [on] March 4, 2020." Defendants contend that this difference in dates is relevant because Defendants received the documents after they had "already filed their reply brief." The dispute, however, is irrelevant because Defendants received the documents at least three months before the hearing, giving them ample time to supplement the reply brief as well as to serve their own discovery requests. *See* Rule 1-033(C)(3) NMRA; *see also* Rule 1-034(B) NMRA; Rule 1-036(A) NMRA.

**{21}** We conclude that the district court did not err by denying Defendant's request to conduct discovery given that Defendants had ample time to conduct discovery and failed to do so. *See Enriquez*, 1998-NMCA-157, ¶ 36.

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm

**{23}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**