The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 10, 2023</u>

**No. A-1-CA-39940**

**ISAIAH ROJAS,**

Plaintiff-Appellant,

v.

**RELIABLE CHEVROLET (NM), LLC
d/b/a RELIABLE NISSAN and OLD
UNITED CASUALTY COMPANY,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa Chavez Ortega, District Court Judge**

Bradley Law Firm, LLC
Joshua Bradley
Albuquerque, NM

Treinen Law Office
Rob Treinen
Albuquerque, NM

for Appellant

Decker Griffel, LLC
Benjamin Decker
Lindsay Griffel
Albuquerque, NM

for Appellees

Park & Associates, LLC
Alfred A. Park
Geoffrey D. White
Albuquerque, NM

for Amicus Curiae New Mexico Automotive Dealers Association

**OPINION**

**HANISEE, Judge.**

{1}     Plaintiff Isaiah Rojas appeals the district court's grant of Reliable Chevrolet (NM), LLC and Old United Casualty Company's (collectively, Defendants) motion to compel arbitration in his claim for fraud, in violation of the Unfair Practice Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019); negligence and punitive damages arising from Plaintiff's purchase of an allegedly defective vehicle; and Defendants' prior assurances leading to the sale. More specifically, Plaintiff argues that the arbitration agreement provision of the purchase contract should not be enforced because the entire contract is substantively unconscionable due to a provision that bars punitive damages against only the dealership, in this case Reliable Chevrolet. Plaintiff maintains that this bar against punitive damages deprives him of statutorily created treble damages under the UPA and thereby constitutes an unconscionable contract term. The district court ordered arbitration, and we affirm.

{2}     Whether punitive and treble damages are distinct concepts—such that referencing punitive damages in a contract necessarily implicates treble damages—is a novel question in New Mexico. We hold that in the context of this contract, punitive damages and treble damages are sufficiently distinct such that a bar on the former does not disallow the latter. As such, the arbitration agreement in question is

not unconscionable, the contract is enforceable, and the district court was correct to submit the parties' dispute to arbitration.

**BACKGROUND**

{3}    In August 2020, Plaintiff purchased a 2018 Chevrolet Sonic from Reliable Chevrolet. Plaintiff alleges that in the process of purchasing the vehicle, the dealership failed to accurately convey the car's prior damage in order to sell a defective product. In the process of purchasing the vehicle, Plaintiff signed a "Buyer's Order Agreement and Bill of Sale" provided by the dealership. The entire bill of sale document is three pages: one page for the bill of sale and two additional pages labeled "Additional Terms." The bill of sale identifies the buyer and vehicle details, but also includes additional information regarding warranties and other legal notices at the bottom in fine print. In particular, the bill of sale states in all capitalized letters (the damages limitation provision):

> ALL VEHICLES: DEALER IS NOT LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF THIS SALE OR THE USE OF THIS VEHICLE, INCLUDING BUT NOT LIMITED TO LOSS OF USE, LOSS OF TIME, INCONVENIENCE, TRANSPORTATION, RENTAL, LOSS OF EARNINGS OR PROFITS, OR ANY COMMERCIAL LOSS.

Moreover, the "Additional Terms" section includes the following provision in paragraph sixteen (the arbitration provision):

> Any dispute between Buyer and Dealer arising out of this transaction will be decided by arbitration in the City of Albuquerque, New Mexico under the New Mexico Uniform Arbitration Act and the applicable

rules of the American Arbitration Association. Any arbitration award may be enforced as provided by law.

{4}     Following Plaintiff's filing of his complaint in March 2021, Defendants moved to stay proceedings in district court and compel arbitration under the agreement. Plaintiff opposed the motion, arguing that the arbitration agreement should not be enforced because the contract is unconscionable, primarily based upon the one-sided punitive damages limitation provision. At the motion hearing, Defendants argued that the contract's bar on punitive damages does not limit statutory damages, such as treble damages under the UPA, and is therefore enforceable. The district court found that "[t]he [b]uyer's [o]rder contract contains an arbitration agreement. The [c]ourt finds that the arbitration agreement is bilateral, not unconscionable, and should be enforced."

**DISCUSSION**

{5}     "[W]hether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901 (internal quotation marks and citation omitted). "Arbitration agreements are a species of contract subject to generally applicable contract law, including unconscionability." *Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 12, 470 P.3d 218. "A contract is ambiguous if separate sections appear to conflict with one another or when the language is

3

reasonably and fairly susceptible of more than one meaning." *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 14, 134 N.M. 558, 80 P.3d 495. "We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it." *Id.* "We consider the documents as a whole to determine how they should be interpreted." *Campbell v. Millennium Ventures, LLC*, 2002-NMCA-101, ¶ 15, 132 N.M. 733, 55 P.3d 429.

{6}     "[U]nconscionability is an affirmative defense to contract enforcement, and under settled principles of New Mexico law, the party asserting an affirmative defense has the burden of proof." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 3, 304 P.3d 409. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21. "A one-sided arbitration agreement is not substantively unconscionable merely by way of its one-sidedness. Rather, our substantive unconscionability law requires a determination that the one-sidedness of an arbitration agreement is unfair and unreasonable." *Peavy*, 2020-NMSC-010, ¶ 13.

{7}     "While there is a greater likelihood of a contract[] being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be

4

present to the same degree or that they both be present at all." *Cordova*, 2009-NMSC-021, ¶ 24. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves." *Id.* ¶ 22. "Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair." *Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215.

{8} "New Mexico has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or some principle of justice or rule of public morals." *Cent. Mkt., Ltd., Inc. v. Multi-Concept Hosp., LLC*, 2022-NMCA-021, ¶ 22, 508 P.3d 924 (alteration, omission, internal quotation marks, and citation omitted). "It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts, and agreements therefore are not to be held void as being contrary to public policy, unless they are clearly contrary to what the [L]egislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way." *Berlangieri v. Running Elk Corp.*, 2002-NMCA-060, ¶ 11, 132 N.M. 332, 48 P.3d 70 (internal quotation marks and citation omitted). "Every statute is a manifestation of some public policy." *State ex rel. Balderas v. ITT Educ. Servs., Inc.*, 2018-NMCA-044, ¶ 15, 421 P.3d 849 (internal quotation marks and citation

omitted). "We have recognized public policy violations where the terms of a contract have been contrary to statutory provisions." *Id.* ¶ 14.

{9} In *Peavy*, our Supreme Court articulated a two-step analysis used to evaluate substantive unconscionability for potentially unreasonably one-sided contracts. 2020-NMSC-010, ¶ 20. First, "[t]he [district] court should look to the face of the arbitration agreement to determine the legality and fairness of the contract terms themselves." *Id.* (internal quotation marks and citation omitted). "Second, if the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." *Id.* ¶ 21. "The evidence need not show that the agreement is not one-sided, but rather must justify that the agreement's exceptions are fair and reasonable." *Id.*

{10} As a preliminary matter, we observe that the district court's determination below is predicated on an overly narrow view of the contract terms, which limited analysis to the arbitration provision contained within paragraph sixteen of the "Additional Terms" and did not consider the impact of the damages limitation on the agreement to arbitrate. The district court's order briefly references the *Peavy* steps in erroneously deciding the contract is bilateral under step one, but still determines that the agreement is not unconscionable under step two. Albeit, many

arbitration agreements are independent contracts unto themselves unlike the present case where the arbitration provision is a clause within a broader contract, but that does not mean that we do not evaluate the contract as a whole. *See Campbell*, 2002-NMCA-101, ¶ 15. Our Supreme Court has even looked to a separate, "appended" employee handbook in evaluating the enforceability of related arbitration agreements. *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶¶ 1, 5, 135 N.M. 447, 90 P.3d 466. Considering all claims here are to be submitted to arbitration, this damages limitation provision would logically be employed as a part of arbitration. So when Plaintiff challenged the unconscionability of the damages provision and argued that the unfairness rendered the arbitration agreement unenforceable, these provisions must be considered in light of the entire contract. Therefore, analysis for unconscionability in this case must contemplate the contract as a whole, not merely the arbitration language in paragraph sixteen. *See Campbell*, 2002-NMCA-101, ¶ 15. Though we do not agree with the district court's analysis under the first step of *Peavy*, we still affirm the district court's ruling on the contract's reasonableness and ultimate substantive unconscionability. *See Cordova*, 2009-NMSC-021, ¶ 18 ("Even if the issue had not been preserved below, it is established law that our appellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair to the appellant to affirm.").

{11}     As Plaintiff challenges the substantive unconscionability of the contract, we begin with the first step of the *Peavy* two-part analysis, concluding that the challenged contract term—the damages provision—is facially one-sided. Looking at the face of the document, the plain and unambiguous terms of this contract disclaim any incidental, consequential, or punitive damages only on the dealer's part. The buyer of this contract receives no protection against such damages. From our review of the briefing, the parties do not seem to contest this issue. There is no other way to read these terms but to decide that the terms themselves are facially one-sided and unilateral so we proceed to the second step.

{12}     In the second step to the *Peavy* analysis, a court is to determine whether—in spite of the one-sided nature of the agreement—the contract terms are still fair and reasonable given the circumstances of the case. 2020-NMSC-010, ¶ 21. In briefing to this Court, Plaintiff does not argue that disclaiming incidental or consequential damages are unconscionable. Indeed, our Legislature permits disclaiming consequential damages to commercial losses in contracts for sales of goods through adoption of the Uniform Commercial Code, Article 2, Section 719. *See* NMSA 1978, § 55-2-719(3) (1961) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."). Moreover, neither

the Uniform Commercial Code nor our Legislature's adopted version endorse the enforcement of otherwise unconscionable contracts. *See id.*; NMSA 1978, § 55-2-302 (1961). Given that Plaintiff makes no contrary argument, we assume without deciding that the one-sided limitation at issue that disallows Plaintiff's recovery of incidental or consequential damages is reasonable in this case regarding the sale of a vehicle with alleged commercial losses. *See* § 55-2-719(3). We observe that such may not be the case in a different contract or arbitration agreement, such as those governing claims involving injuries to persons, but that is not the case before us.

{13}    Here, Plaintiff focuses his argument against the district court's finding of reasonableness on the punitive damages limitation. By restricting punitive damages, Plaintiff alleges that Defendants are restricting access to statutorily mandated treble damages under the UPA provided by the Legislature. Our state precedent on unconscionability disfavors enforcement of contracts that contravene a statute, which would include removing an affirmatively granted remedy by the Legislature. *See Cent. Mkt., Ltd.*, 2022-NMCA-021, ¶ 22; *ITT Educ. Servs., Inc.*, 2018-NMCA-044, ¶ 14. We therefore look to the remedy granted by the Legislature that Plaintiff alleges is being circumvented. Our Legislature enacted several provisions in the UPA that allow for treble damages:

> Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three

9

times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

Section 57-12-10(B). Likewise, the UPA includes a damages provision specific to misrepresentation of motor vehicles:

Notwithstanding the provisions of Subsection D of Section 57-12-10 . . . , [allowing for other remedies under common law or other statute] the award of three times actual damages as provided for in that section shall be in lieu of any award of punitive damages based only on those facts constituting the unfair or deceptive trade practice or unconscionable trade practice.

Section 57-12-6(E).

{14} Plaintiff argues that the contract term prohibiting the award of "punitive damages" prohibits an arbitrator or a court from awarding statutory treble damages granted by the Legislature in the UPA. Plaintiff bases his argument on *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 20, 110 N.M. 314, 795 P.2d 1006, in which our Supreme Court held primarily that prevailing plaintiffs must choose between either treble damages under the UPA or the common law-based punitive damages under their misrepresentation and fraud claims. In reaching the conclusion that receiving both damages would be double recovery, our Supreme Court stated, "Multiplication of damages pursuant to statutory authority is a form of punitive damages." *Id.* Reasonably, treble damages are both "punitive" and "damages." Nonetheless, the contract term in the instant case does not disclaim damages that are punitive, it

10

disclaims "punitive damages." In the case of the contract at issue, such is a distinction with a difference.

{15} Defendant argues that our Supreme Court's comments in *Hale* are more nuanced than Plaintiff suggests. Defendant reiterates that *Hale*'s holding is that a plaintiff entitled to both treble damages and punitive damages must choose between them to avoid a double recovery. *See id.* ¶ 28. As indicated by its holding, *Hale* was a case about determining whether the principles underlying the two kinds of damages are sufficiently distinct such that receipt of both awards amounted to double recovery. *Id.* The case before us asks whether there are any other distinctions of note—including procedural mechanisms and their practical application by litigants—that would sufficiently distinguish treble from punitive damages to make treble damages recoverable where punitive damages are contractually barred. Our Supreme Court's observation that treble damages are a form of punitive damages comes from a paragraph that otherwise focuses on double recovery. *See id.* ¶ 20. Indeed, following the language on which Plaintiff focuses, the opinion states,

> We agree with [the d]efendant that recovery of both statutory treble damages and punitive damages based upon the same conduct would be improper. As we read Section 57-12-10(D), the [L]egislature created a new statutory remedy in addition to those otherwise available, but did not suggest that a party would be entitled to multiple awards of damages arising out of the same conduct.

*Id.* The surrounding context in this paragraph is focused narrowly on the double recovery issue. We are hesitant to expand this comment in scope drastically beyond

11

the context in which our Supreme Court discussed it. Moreover, in subsequent portions of the opinion, the Court seemingly also approves of the defendant's contention that treble damages are a "new statutory remedy" that are distinct from the previously available common law punitive damages. *See id.*; *see also Akins v. United Steel Workers of Am., AFL-CIO, CLC, Loc. 187*, 2010-NMSC-031, ¶ 1, 148 N.M. 442, 237 P.3d 744 ("In virtually all claims sounding in tort, our common law permits punitive damages where appropriate to punish outrageous conduct and to deter similar conduct in the future."). *Hale* holds that treble damages are a *form* of punitive damages, but we do not consider *Hale* to mandate that treble damages are merely a subset of punitive damages such that a contract addressing punitive damages necessarily incorporates treble damages within the provision at issue.

{16}     We likewise find it notable that the motor vehicle section of the UPA specifically describes treble damages and punitive damages as mutually exclusive alternatives. *See* § 57-12-6(E) ("[T]he award of three times actual damages as provided for in that section *shall be in lieu of* any award of punitive damages." (emphasis added)). This Court has held, relying directly on *Hale,* that the UPA does not contemplate the award of punitive damages beyond the treble damages established by the statute. *See McLelland v. United Wis. Life Ins. Co.*, 1999-NMCA-055, ¶ 13, 127 N.M. 303, 980 P.2d 86 ("[T]o obtain punitive damages beyond those permitted by the statutory treble-damages provision, the plaintiff must establish a

cause of action other than one under the UPA."). This type of disjunctive treatment by the Legislature indicates to us that these two types of damages are sufficiently distinct concepts such that a broad term disclaiming punitive damages would not inherently implicate UPA treble damages. Said differently, this contract is not unconscionable because the only damages recovery the damages provision takes off the table are common law punitive damages *not* granted by the Legislature, leaving the statutory treble damages available to Plaintiff.

{17}    We are further persuaded by Defendant's observation that treble damages are distinct from punitive damages because they are levied by the district court after a finding of willfulness by the finder of fact, unlike punitive damages which are determined and calculated by the finder of fact itself. The act of trebling damages is a rote multiplication of the prevailing party's actual damages performed by a judge or arbitrator after a finding of willful engagement with a deceptive trade practice, *see* § 57-12-10(B), in contrast to common law punitive damages which are determined by a finder of fact based on a broader standard of malicious, willful, reckless, wanton, fraudulent, or bad faith conduct, *see* UJI 13-1827 NMRA (defining punitive damages). This difference further suggests to us that disclaimed punitive damages do not function as well to bar treble damages.

{18}    Insofar as the punitive damages contract term could be considered ambiguous, relevant to our analysis are the canons of construction that courts should construe

both ambiguous contract terms and exculpatory clauses against their drafters. *See Heye*, 2003-NMCA-138, ¶ 14; *see also Berlangieri v. Running Elk Corp*, 2003-NMSC-024, ¶ 28, 134 N.M. 341, 76 P.3d 1098 ("[E]xculpatory clauses are construed strictly against the drafter."). Defendant argues that we should read the contract term narrowly, excluding only common law punitive damages and leaving treble damages available to the nondrafting Plaintiff. When we interpret a contract "against" the drafter, we interpret it in a narrow manner to protect the rights of the nondrafting party. *See Heye*, 2003-NMCA-138, ¶ 14 ("We construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it."). We are not inclined to interpret an ambiguous contract to give drafter defendants *more* exculpatory protection. *See id.* It follows that these canons of interpretation also suggest we should read the term "punitive" narrowly so as to protect Plaintiff's right to treble damages.

{19}     Lastly, practicing attorneys seemingly use these two terms as distinct concepts as evidenced by Plaintiff's complaint in his request for relief. At the onset of litigation, Plaintiff requested the following relief from the district court:

> B.   Actual and punitive damages, including incidental and consequential damages, for fraud;
>
> C.   Actual or statutory damages, including incidental and consequential damages, trebled, for violations of the UPA;
>
> D.   Actual and punitive damages, including incidental and consequential damages, for negligence.

14

Plaintiff asked the court for punitive damages under the common law in points "B" and "D," and for trebled statutory damages under the UPA in point "C." In a practical, common sense approach, Plaintiff talks about the two kinds of damages as distinct concepts. Plaintiff did not ask for punitive damages under the UPA. He asked for punitive damages as to common law claims, and trebled statutory damages for his claim under the UPA. Nothing about a bar on punitive damages would deprive Plaintiff of what the Legislature provided under the UPA based on what he asked for in his complaint. If Plaintiff makes this distinction himself in his complaint, we struggle to see why we should not make the same distinction in reading the underlying contract.

{20}    The Legislature's indication—congruent with the holding in *Hale*—that these are two mutually exclusive kinds of damages arising from statutory and common law sources respectively indicates to us that they are sufficiently distinct concepts for purposes of the contract's limitation on punitive damages. Therefore, we hold that this contract that limits punitive damages does not bar the award of statutorily created treble damages under the UPA. As such, Plaintiff's contentions regarding the contract's substantive unconscionability on this basis are unavailing. Regarding this contract and the arguments before us, exculpations of punitive, consequential, and incidental damages are reasonable and fair under *Peavy*'s second step so long as actual damages and statutory damages are in place. *See* 2020-NMSC-010, ¶¶ 20-22.

{21}   Accordingly, we affirm the district court's determination that the contract and the arbitration provision contained within must be enforced, and therefore remand with instructions to submit the case to arbitration.

{22}   **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**


**WE CONCUR:**


_____
**JACQUELINE R. MEDINA, Judge**


_____
**KATHERINE A. WRAY, Judge**

16